**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                            :
                                               :
           Plaintiff,            :    Civil Action No. 1:21-cv-7588
                                               :
v.                                        :
                                               :   **COMPLAINT FOR VIOLATIONS OF**
SANDERSON FARMS, INC., FRED        :   **SECTIONS 14(a) AND 20(a) OF THE**
BANKS, JR., DAVID BARKSDALE, JOHN   :   **SECURITIES EXCHANGE ACT OF**
BIERBUSSE, LAMPKIN BUTTS, MIKE      :   **1934**
COCKRELL, TONI D. COOLEY, BEVERLY  :
HOGAN, EDITH KELLY-GREEN, PHIL K.   :   **JURY TRIAL DEMANDED**
LIVINGSTON, SUZANNE MESTAYER,      :
SONIA PEREZ, GAIL JONES PITTMAN,     :
and JOE F. SANDERSON, JR.,               :
                                               :
           Defendants.          :
--------------------------------------------------------

       Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

       1.      This is an action brought by Plaintiff against Sanderson Farms, Inc. ("Sanderson Farms or the "Company") and the members of Sanderson Farms board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Sanderson Farms by Cargill Meat Solutions Corporation ("Cargill") and the Continental Grain Company ("Continental Grain" and with Cargill, the "Purchasing Group") and their affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on September 3, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sycamore Merger Sub LLC ("Merger Sub"), a wholly owned subsidiary of Walnut Sycamore Holdings LLC ("Parent"), will merge with and into Sanderson Farms with Sanderson Farms surviving the merger and becoming an indirect wholly owned subsidiary of Parent (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Sanderson Farms common share issued and outstanding will be converted into the right to receive $203.00 in cash (the "Merger Consideration"). Parent and Merger Sub are both affiliates of the Purchasing Group.

3.      As discussed below, Defendants have asked Sanderson Farms stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Centerview Partners LLC ("Centerview") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sanderson Farms stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Sanderson Farms common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Fred Banks, Jr. has served as a member of the Board since 2007.

11.     Individual Defendant David Barksdale has served as a member of the Board since 2018.

12.     Individual Defendant John Bierbusse has served as a member of the Board since 2006.

13.     Individual Defendant Lampkin Butts has served as a member of the Board since 1998 and is the Company's President.

14.     Individual Defendant Mike Cockrell has served as a member of the Board since1998.

15.     Individual Defendant Toni D. Cooley has served as a member of the Board since 2007.

16.     Individual Defendant Beverly Hogan has served as a member of the Board since 2004.

17.     Individual Defendant Edith Kelly-Green has served as a member of the Board since 2018.

18.     Individual Defendant Phil K. Livingston has served as a member of the Board since 1989 and is the Lead Independent Director.

19.     Individual Defendant Suzanne Mestayer has served as a member of the Board since 2017.

20.     Individual Defendant Sonia Perez has served as a member of the Board since 2019.

21.     Individual Defendant Gail Jones Pittman has served as a member of the Board since 2002.

22.     Individual Defendant Joe F. Sanderson, Jr. has served as a member of the Board since 1984 and is the Company's Chairman and Chief Executive Officer.

23.     Defendant Sanderson Farms is incorporated in Mississippi and maintains its principal offices at 127 Flynt Road, Laurel, Mississippi 39443.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "SAFM."

24.     The defendants identified in paragraphs 10-22 are collectively referred to as the "Individual Defendants" or the "Board."

25.     The defendants identified in paragraphs 10-23 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

26.     Sanderson Farms, an integrated poultry processing company, produces, processes, markets, and distributes fresh, frozen, and prepared chicken products in the United States. The Company sells ice-packed, chill-packed, bulk-packed, and frozen chicken primarily under the Sanderson Farms brand name to retailers, distributors, and casual dining operators in the southeastern, southwestern, northeastern, and western United States, as well as to customers who resell frozen chicken into export markets. Its prepared chicken product line includes institutional and consumer packaged partially cooked or marinated chicken items for distributors and food service establishments. Sanderson Farms was founded in 1947 and is headquartered in Laurel, Mississippi.

27.     On August 9, 2021, Sanderson Farms and the Purchasing Group jointly announced that they had entered into a proposed transaction:

> MINNEAPOLIS and NEW YORK and LAUREL, Miss., Aug. 9, 2021 /PRNewswire/  -- Cargill, Continental Grain Company, and Sanderson Farms, Inc. (NASDAQ: SAFM) announced today they have reached a definitive agreement for a joint venture between Cargill and Continental Grain to acquire Sanderson Farms for $203 per share in cash, representing a total equity value for Sanderson Farms of $4.53 billion. The purchase price represents

a 30.3% premium to Sanderson Farms' unaffected share price of $155.74 on June 18, 2021, the last full trading day prior to media speculation about the potential sale of Sanderson Farms; a 22.8% premium to the Sanderson Farms 30-day volume weighted average price ("VWAP") as of June 18, 2021, and a 15.2% premium to the all-time high share price as of June 18, 2021. Upon completion of the transaction, Cargill and Continental Grain will combine Sanderson Farms with Wayne Farms, a subsidiary of Continental Grain, to form a new, privately held poultry business.

The combination of Sanderson Farms and Wayne Farms will create a best-in-class U.S. poultry company with a high-quality asset base, complementary operating cultures, and an industry-leading management team and workforce. The new company will be well positioned to enhance its service to customers across retail and food service and drive organic growth in an industry fueled by affordability and key consumer trends around the health, sustainability, and versatility of chicken.

"Since my grandfather founded Sanderson Farms 75 years ago, our many significant achievements have been driven by our commitment to providing the very best chicken products in a profitable manner that benefits each of the constituents who contribute to our success. This transaction is the culmination of that commitment, as it delivers a significant value to our stockholders, reflecting the dedication of our team, and our best-in-class assets, quality products, efficient and sustainable operations, and respected brand," said Joe Sanderson, Chairman and Chief Executive Officer of Sanderson Farms, Inc. "We are proud to be joining with Cargill and Continental Grain and we are confident that they will be strong stewards of the Sanderson Farms team, brand and assets going forward. As part of the newly created company, Sanderson Farms and its new owners will remain committed to the employees, poultry producers, customers, communities, environment, and animals under our care, and to continuing to deliver the highest quality products and the best service in our industry to our customers."

"We are very happy to partner with Cargill with whom we have had a decades-long relationship between two family-owned companies. Sanderson Farms' operations, best-in-class assets and valuable brand have underscored their success, and we have the highest respect for Joe Sanderson, and the business and team he has built as the third generation CEO," said Paul Fribourg, Chairman and CEO of Continental Grain. "Wayne Farms has been one of the most important and successful parts of Continental Grain for almost 60 years, so bringing together two great partners with two great

poultry companies will ensure good things for our customers, our grower partners, and our employees."

The new company will have state-of-the-art operations and will continue to invest in its workforce and in employee safety. Operations will include poultry processing plants and prepared foods plants across Alabama, Arkansas, Georgia, Louisiana, Mississippi, North Carolina, and Texas.

"At Cargill, we are committed to nourishing the world in a safe, responsible and sustainable way," said David MacLennan, Chairman and CEO of Cargill. "Expanding our poultry offerings to the U.S. is a key enabler of our ability to meet customer and consumer demands. With these great businesses, and our strong partnership, we believe we will deliver a superior portfolio of products and services to our customers."

Cargill expects to support the new joint venture with its longstanding relationships with retail and foodservice customers. Wayne Farms, part of Continental Grain's food, agriculture and commodities investment portfolio since 1965, has roots in the poultry industry that go back more than a century.

PARTNERING WITH FARMERS AND COMMUNITIES

Cargill, Continental Grain, and Sanderson Farms are committed to ensuring operational excellence, workplace safety, and the highest quality of product for the U.S. poultry industry.

Cargill and Continental Grain have long histories of investing and partnering with American farmers and are dedicated to strengthening the food and agriculture industries for the benefit of consumers and growers. Their shared culture, built on the principles of supporting farmers and communities, complements Sanderson Farms' reputation as one of the industry's most respected operators. Sanderson Farms' strong brand, reputation, and best-in-class assets will remain a core part of the combined company. In addition, Wayne Farms' deep customer relationships across the food service sector complement Sanderson Farms' diverse grocery and retail relationships.

TRANSACTION DETAILS

The transaction is expected to close by the end of 2021 or early 2022, and will be subject to regulatory and Sanderson Farms stockholder approval, and other customary closing conditions.

The acquisition consortium has committed equity and debt financing in place to complete the transaction.

Wayne Farms CEO Clint Rivers will lead the combined company.

Upon the completion of the transaction, Sanderson Farms will become a private company, and its shares will no longer be traded on NASDAQ.

BofA Securities acted as the financial advisor to Cargill and Freshfields Bruckhaus Deringer (US) LLP acted as legal counsel. Gibson Dunn & Crutcher acted as tax counsel.

Centerview Partners LLC acted as financial advisor to Sanderson Farms and Wachtell Lipton Rosen & Katz and Fishman Haygood LLP acted as legal counsel.

Lazard acted as the financial advisor for Wayne Farms and Continental Grain, and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal counsel.

\* \* \*

28.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Sanderson Farms' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

29.     On September 3, 2021, Sanderson Farms filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Sanderson Farms Financial Projections*

30.     The Proxy Statement fails to provide material information concerning financial projections by Sanderson Farms management and relied upon by Centerview in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Sanderson Farms management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

31.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, NOPAT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

32.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

34.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

35.     With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the individual metrics for the companies observed by Centerview in the analysis; (ii) the basis for applying a downward adjustment of 25% to the median EV/EBITDA

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

multiples for the selected companies; (iii) the Company's net cash at July 31, 2021; (iv) the number

of shares of Company common stock outstanding as of July 31, 2021 on a fully diluted basis.

36.     With respect to Centerview's *Selected Transactions Analysis* for the Company, the

Proxy Statement fails to disclose the individual metrics for the transactions observed by

Centerview in the analysis.

37.     With respect to Centerview's *Discounted Cash Flow Analysis* for the Company, the

Proxy Statement also fails to disclose: (i) the range of implied equity values for the Company; (ii)

the inputs and assumptions underlying the use of perpetuity growth rates of 1.0% to 2.0%; (iii) the

inputs and assumptions underlying the range of discount rates ranging from 7.5% to 8.5%; (iv) the

Company's estimated net cash at July 31, 2021; (v) the number of shares of Company common

stock outstanding as of July 31, 2021 on a fully diluted basis.

38.     With respect to Centerview's *Analyst Price Target Analysis*, the Proxy also fails to

disclose: (i) the stock price targets for the shares of Sanderson Farms common stock; and (ii) the

Wall Street research analysts observed.

39.     In sum, the omission of the above-referenced information renders statements in the

Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with

irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Centerview and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.    The Individual Defendants acted as controlling persons of Sanderson Farms within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Sanderson Farms, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sanderson Farms, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sanderson Farms, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 10, 2021                **MELWANI & CHAN LLP**

                                        By:  /s *Gloria Kui Melwani*
                                             Gloria Kui Melwani (GM5661)
                                             1180 Avenue of Americas, 8th Fl.
                                             New York, NY 10036
                                             Telephone: (212) 382-4620

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*